UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PABLO OLIVEIRA DOS REIS,<br><br>　　　　　Petitioner,<br><br>v.<br><br>JOSEPH D. MCDONALD, JR., Sheriff, Plymouth Sheriff's Office,<br><br>　　　　　Respondent. | Civil Action No. 1:25-CV-10497-RGS |

**Memorandum of Law in Opposition to Respondent's Motion to Dismiss**

　　Petitioner Pablo Olivera Dos Reis is a 21-year-old young man who has been present in the United States since 2019. He surrendered to Customs and Border Patrol immediately after entering the United States at the age of 15 and has lived peaceably in the country ever since, attending school and work without incident. He has had no contact with law enforcement until the fall of 2024 and has attended all immigration and court hearings until his detention by Respondent. Yet, an Immigration Judge found that the government had proven that he was a flight risk by a preponderance of the evidence. The Immigration Judge rested this finding exclusively on the fact that he was present in the same car as other individuals who were observed to have sold firearms to an undercover agent. Guilt by association is not proof of flight risk. Yet Mr. Olivera Dos Reis has been incarcerated for almost six months based on his mere presence at the scene of a crime. Respondent cannot establish that he has failed to plausibly allege that this was a legal error.

　　The law in this Circuit requires that the government prove that an immigration detainee subject to discretionary detention is a flight risk by a preponderance of the evidence. This

1

requirement is enforceable in the federal courts and is plausibly alleged to have been violated in this matter based on the record of proceedings. On Respondent's view, the import of the First Circuit's precedent and the Constitution is at most, that an agency official need only "invoke" the correct legal standard in order to comply with due process. That is not the law.

Due process imposes legal standards that the agency is bound to correctly apply in accordance with the precedents of the First Circuit. The Immigration Judge was required to hold the government to their burden of proving flight risk by a preponderance of the evidence. Determining whether a given set of facts meets a legally defined standard is a legal question, even if the determination involves the application of facts to the legal standard. The Supreme Court has recently clarified that mixed questions of fact and law in removal proceedings are legal questions that are reviewable in federal courts. At least one circuit court has recognized that this applies with equal force in challenges to immigration detention adjudications sounding in habeas. Yet Respondent does not even mention these authorities.

Mr. Olivera Dos Reis is not asking this Court to second guess the Immigration Judge's fact finding or exercise of discretion. Rather, the Petition demonstrates that the agency's decision is legally unsustainable. Awareness of or physical proximity to alleged criminal activity, cannot prove a propensity to flee from future hearings. The language of the order itself confirms this, expressly basing its finding on "inclination" and "belief" rather than evidentiary support for a legal conclusion:

> While the **record does not suggest by clear and convincing evidence that the Respondent was at all involved in the illegal arms sale he witnessed**, there is a preponderance of the evidence of his awareness of the illegality of the conduct that occurred right before his eyes. **Because the Respondent has voluntarily connected himself with such dangerous and highly illegal activities, the Court is not inclined to believe that he is likely to follow the instructions or other orders of the Court should he be granted bond.** Therefore, after considering the totality of the

> evidence, the Court found that DHS demonstrated by a preponderance of the evidence that the Respondent poses a flight risk. The Court also found that the risk of flight could not be ameliorated by any amount of bond or combination of conditions of release. ECF 1, Exhibit 5 at 4-5. (emphasis added)

In any event, the detailed factual assertions offered in this Petition and supported by record evidence when read in the light most favorable to the nonmoving party, plainly survive a motion to dismiss and are more than sufficient to invoke this Court's jurisdiction. The Court should deny the Motion to Dismiss.

## I. BACKGROUND

The factual background is set forth in the Petition. *See* ECF 1 at 2-6. As stated there, Petitioner was the passenger in the back seat of a car in which the occupants of the front seat are charged with, *inter alia*, offenses related to firearms. ECF 1, Ex.t 2 at 7. Unlike the others, and because he was not involved in the arms sales that were being investigated, he was charged only with one count of conspiracy (to traffic firearms). *Id*. No facts that support Petitioner's involvement or knowledge of the conspiracy are offered anywhere in the police report or charging document. *Id*.

A custody review was held before an Immigration Judge ("IJ"). *Id*. at Ex. 4, 5. The Department of Homeland Security (DHS) argued that Mr. Olivera Dos Reis was both a danger to the community and a flight risk. *Id*. Mr. Olivera Dos Reis offered evidence that he was not a flight risk including establishing that he had a stable address, community ties and a history of attending all state court and immigration hearings prior to being placed in ICE detention. *Id*. at 6. He also offered evidence that he has viable paths to immigration relief including Special Immigrant Juvenile Status, asylum, and withholding of removal. *Id*.

The IJ expressly agreed that DHS did not meet its burden of establishing that Petitioner was a danger to the community. *Id*. Ex. 5, at 4-5. She found that "there is nothing in the record to suggest that "[Mr. Olivera Dos Reis] had any knowledge of or involvement in the sale [of firearms]." *Id.* at 4. However, without explanation, the IJ summarily concluded that DHS had demonstrated "by a preponderance of the evidence" that Mr. Olivera Dos Reis was aware "of the illegality of the conduct that occurred right before his eyes." *Id.* The IJ then opined that because Petitioner "voluntarily connected himself with such dangerous and highly illegal activity" that the IJ "was not inclined to believe that he is likely to follow the instructions or other orders of the Court if granted bond." *Id.* The IJ therefore denied bond.

Mr. Olivera Dos Reis noticed and submitted an administrative appeal to the BIA that is pending before the agency. *Id.* Ex. 6. To date the agency has taken no action on the appeal.

Respondent contends that the Court lacks subject matter jurisdiction because Mr. Olivera Dos Reis's requested relief of transport to state court proceedings is moot because DHS has agreed to allow Mr. Olivera Dos Reis to appear remotely via zoom for certain pretrial hearings, that he failed to exhaust administrative remedies because the IJ's decision is still pending review by the Board of Immigration Appeals (BIA), and that the IJ's bond decision is discretionary and therefore unreviewable. ECF 10 at 6-10. He also asserts that the Petitioner failed to plausibly allege that the IJ abused her discretion and as such the Petition must be dismissed under Fed. R. Civ. Pro. 12(b)(6). This Memorandum in Opposition follows.

**II.   STANDARD OF REVIEW**

A motion to dismiss must accept as true all well-pleaded facts in the Complaint, "analyz[e] those facts in the light most hospitable to the plaintiff's theory, and draw[] all reasonable inferences for the plaintiff." *See United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 383–

4

84 (1st Cir. 2011). In determining whether to grant a motion to dismiss, the court must "consider only the 'facts alleged in the complaint, and exhibits attached thereto.'" *Newman v. Lehman Bros. Holdings Inc.*, 901 F.3d 19, 25 (1st Cir. 2018) (citing *Freeman v. Town of Hudson*, 714 F.3d 29, 35 (1st Cir. 2013)). The First Circuit recognizes "some 'narrow exceptions' in which a court may . . . consider extrinsic documents." *Id.* These include documents that are: (1) official records; (2) sufficiently referred to in the complaint; (3) central to the plaintiff's claim; or (4) where the document's authenticity is undisputed. *Id.*; *see also Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (same). In *Gagliardi v. Sullivan*, the First Circuit indicated that its review of a Rule 12(b)(6) dismissal is limited to documents attached to or incorporated into the complaint or susceptible to judicial notice. 513 F.3d at 305–06.

The function of a motion to dismiss is generally to test whether a complaint is sufficient to proceed to discovery. *See, e.g.*, *Godin v. Schencks,* 629 F.3d 79, 89 (1st Cir. 2010). A Habeas Petition by contrast does not automatically involve discovery, and a court is authorized "to summarily hear and determine the facts and dispose of the matter as law and justice require." *Amanullah v. Nelson*, 811 F.2d 1, 16 (1st Cir. 1987) (citing 28 U.S.C.A. § 2243). Nevertheless, as Respondent has chosen to proceed on that basis, Petitioner will oppose the motion under the relevant standards. Further, the Court may, in its discretion apply both the Habeas Corpus rules and the Rules of Civil Procedure as justice may require. *Gomes v. U.S. Dep't of Homeland Sec., Acting Sec'y*, 559 F. Supp. 3d 8, 11 (D.N.H. 2021).

   a. Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction.

In addition to the standards cited by Respondent at ECF 10, pg. 4-5, courts in this District have recognized that there are two types of Rule 12(b)(1) challenges, facial and factual. If a movant offers factual challenges to the Court's jurisdiction, the Court must determine if these challenges

5

are sufficiently intertwined with the merits of the claim, to be "dispositive of both the 12(b)(1) motion to dismiss" and "portions of the merits of Plaintiff's claim. *Strahan v. Roughead*, 910 F. Supp. 2d 358, 364 (D. Mass. 2012) (collecting cases). If a facial challenge to the cause of action can be isolated, the court "may weigh the evidence and satisfy itself as to the existence of its power to hear the claim." *Id.* On the other hand if the factual and legal questions are "so intertwined the resolution of the jurisdictional question is dependent on factual issues going to the merits" the court should only grant the motion to dismiss "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."

    b. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim.

In addition to the standard set out for a motion to dismiss at ECF 10 pgs. 4-5, it also bears emphasizing that "[a] determination of plausibility is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." *Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40, 44–45 (1st Cir. 2012) (internal citations omitted) (cleaned up).

  **III. ARGUMENT**

    a. The Request to be Transported to State Court Proceedings is not Moot but May be Held in Abeyance.

While Mr. Olivera Dos Reis disagrees that his request to be transported to Court is moot, he anticipates that it would become moot if his request for release was granted before his impending trial date. As such, in the interests of judicial economy, he respectfully suggests that this claim may be held in abeyance until such as time as there is an in-person hearing scheduled in the Malden District Court during a time when he is still in Respondent's custody. Undersigned

6

counsel will alert the Court if such a hearing is scheduled and confer with counsel for Respondent to attempt to narrow any disagreement over transport.

    b. The Immigration Judge Erred as a Matter of Law in Finding that Mr. Olivera Dos Reis was a Flight Risk.

      *i. Exhaustion is not required, was accomplished, and in the alternative should be excused as futile*

Mr. Olivera Dos Reis has fully availed himself of all remedies available to him. He presented extensive written and oral arguments to the IJ in which he requested release including under conditions that would assure his appearance at future hearings; he cited controlling Circuit and BIA authority, and even though not required, noticed an administrative appeal to the BIA. ECF 1 at ¶¶ 5, 40; Exhibit 4, Exhibit 6. Respondent's contrary arguments are entirely without merit.

Respondent claims, without citing any authority, that "it is undisputed that the Petitioner has failed to exhaust his administrative remedies because he cannot appeal to the federal court until the BIA has ruled." ECF 10 at 7. The Respondent later admits, as he must, that no statute mandates exhaustion for habeas petitions challenging detention decisions. *Id.* at 8; ;*Figueroa v. McDonald*, 680 F.Supp.3d 18, 22-23 (D. Mass. 2018) (exhaustion to BIA to challenge constitutionality of immigration detention not necessary and futile); *See also, Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (Alito, J., plurality opinion)(finding that jurisdiction channeling provisions of 8 U.S.C. § 1252(b)(9) & (d)(1) --which require legal challenges to orders of removal to be brought through a petition for review of a final order of removal in the court of appeals—do not apply to habeas petitions contesting the legal or constitutional basis of detention).[1]

---

[1] Justice Alito was joined by Justice Kennedy and Chief Justice Roberts in finding that statutory and constitutional challenge to immigration detention could be brought in habeas corpus petitions but reversed the lower court on the merits of the statutory question presented and remanded for

So, while it is true that a petition for review of a final order of removal may only be filed after the BIA has rendered a decision on an appeal of a final order, that is not this case for detention challenges. *See Miranda v. Garland*, 34 F.4th 338, 350-51 (4th Cir. 2022) (finding no statute that mandates exhaustion in order to challenge detention because 8 U.S.C. § 1252(d)(1) only mandates exhaustion as to a final order of removal).

Even if the statutory exhaustion requirement did apply to habeas petitions challenging bond determinations, the Supreme Court has held that § 1252(d)(1) is not a jurisdictional statute, but rather a claims-processing rule that is adaptable to the equities of each case. *Santos-Zacaria v. Garland*, 598 U.S. 411, 418, (2023) (finding that courts may deem exhaustion "pointless, wasteful, or too slow").

As to prudential exhaustion, even the cases cited by Respondent hold that exhaustion does not require completed adjudication by the BIA. Rather, courts look to see if the relevant legal challenge was raised with the IJ, not the BIA. *Brito v. Garland*, 22 F.4th 240, 256 (1st Cir. 2021) (finding that in case were petitioners were no longer detained, it was appropriate to decline to reach arguments not pressed before the IJ, but also collecting cases that held that exhaustion may be excused where petitioners face incarceration or ongoing deprivation of liberty); *Flores-Powell v. Chadbourne*, 677 F.Supp.2d 455, 462–64 (D. Mass. 2010) (failure to appeal denial of bond does not bar habeas where exhaustion not mandatory, a constitutional issue is raised, and exhaustion would be futile). Courts in this District have also found they have jurisdiction to decide as-applied

---

consideration of the constitutional issue. Justice Breyer, joined in dissent by Justice Ginsburg and Justice Sotomayor agreed that district courts have jurisdiction to review such challenges but would have decided the constitutional question presented. *Jennings*, 583 U.S. 281, at 355 (Breyer, J., dissenting). There was, therefore, a majority of the Court in agreement that constitutional challenges to detention may be brought in habeas and do not require a final decision by the BIA affirming an order of removal.

challenges where the Immigration Court recites the correct legal standard but was alleged not to have applied it. *Massingue v. Streeter*, No. 3:19-CV-30159-KAR, 2020 WL 1866255, at *4 (D. Mass. Apr. 14, 2020). No requirement of a final BIA decision on custody was contemplated by these courts.

As stated above, under any equitable or common law conception of exhaustion, Mr. Olivera Dos Reis has fully presented the factual and legal basis of his claims for relief to the agency and state court officials. He now challenges the legality of his detention without sufficient proof of flight risk. At minimum, he challenges the application of the law to the facts of his case by the IJ, rights sounding in due process. Any further appeal to administrative agencies would indeed be "pointless, wasteful, [and] too slow." *Santos-Zacaria*, 598 U.S. at 418.

First, Mr. Olivera Dos Reis is raising an as-applied challenge sounding in due process. The BIA by its own precedents, does not have the authority to decide Constitutional challenges to IJ decisions. *Matter of C-*, 20 I&N Dec. 529, 532 (BIA 1992) (noting that "it is settled" that the immigration judge and the BIA cannot decide constitutional questions). Moreover, as discussed in the Petition, the BIA's interpretation of 8 U.S.C. § 1226 (a) has been superseded in this Circuit by binding Circuit authority that holds that the government must bear the burden of proving flight risk by a preponderance of the evidence. ECF 1 at ¶¶ 23-25; *Hernandez-Lara v. Lyons*, 10 F.4th 19, 33 (1st Cir. 2021). [2]

While the BIA is not precluded from applying First Circuit holdings to a custody case before it, it has not done so in the approximately 4 years since the *Hernandez Lara* decision was

---

[2] It is also incorrect to suggest that Petitioner has not alleged that the Board has predetermined the issues, indeed, the Petition expressly alleges that BIA precedent places the burden on Respondents to disprove flight risk. ECF 1 at 11. That agency position, announced in a published decision, clearly forecloses the relief sought here. *Matter of Adeniji*, 22 I&N Dec. 1102 (BIA 1999); *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).

issued. *Id;* See also, ECF 1 at 11. There is no precedent decision in which the BIA has sustained an appeal of an IJ's incorrect application of the flight risk standard in a bond hearing under 8 U.S.C.1226 (a). Nor is any relevant non-precedent decision available for review. It is therefore futile for Mr. Olivera Dos Reis to be required to wait for the decision of an agency board that has no known history of providing the relief sought here. *See, e.g.*, *Sengkeo v. Horgan*, 670 F. Supp. 2d 116, 122 (D. Mass. 2009) (recognizing exception to exhaustion where "administrative body has predetermined the issue" and claimant has "no reasonable prospect of obtaining relief").

Second, Mr. Olivera Dos Reis has plausibly alleged that it is highly unlikely that any appeal to the BIA would be resolved prior to his removal hearing, currently scheduled in early May. This is hardly an "entirely speculative" claim. *Contra*, ECF at 9. Rather, it is an assertion that more than meets the plausibility threshold when evaluated by "judicial experience and common sense." *Grajales* 682 F.3d at 44-45.*See, e.g.*, *Gulbeault v. R.J. Reynolds Tobacco Co.*, 84 F. Supp. 2d 263, 270 (D.R.I. 2000) ("A federal court may take judicial notice of a fact when it is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.")(citing Fed. R. Evid. 201). The BIA has an enormous case load, the data to confirm this is available on the Department of Justice's own website. EOIR, *Workload and Adjudication Statistics*, (https://www.justice.gov/eoir/workload-and-adjudication-statistics.) It is also now widely reported that the Department of Justice, has chosen to drastically reduce the size of the BIA. Britain Eakin, *Trump Admin to Nearly Half Immigration Appeals Board* LAW 360, (February 20, 2025), (https://www.law360.com/articles/2300903/trump-admin-to-nearly-halve-immigration-appeals-board ). It is therefore more than plausibly pled that awaiting a decision of the BIA before seeking further relief from this Court is impractical, inefficient and futile.

Third, Respondent's submission demonstrates the futility of further exhaustion by confirming that the Department of Justice, of which the Board of Immigration Appeals is a component, is entirely set in the view that the IJ's decision in this case is totally in accord with the law of this Circuit. ECF 10 at 12-14 *See, e.g.*, *Gilbert v. City of Cambridge*, 932 F.2d 51, 61 (1st Cir. 1991) (recognizing "that exhaustion of administrative remedies will not ordinarily be required where the hierarchs have made it quite plain that the relief in question will be denied."). It is, therefore, not plausible to suggest that, if only given an opportunity, the agency might, in the next few weeks, contradict its own attorneys, and agree with Mr. Olivera Dos Reis that their own decision was in error. *Contra,* ECF 10 at 10. *See also*, *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992) (superseded by statute) ("in view of Attorney General's submission that the challenged rules of the prison were 'validly and correctly applied to petitioner,' requiring administrative review through a process culminating with the Attorney General 'would be to demand a futile act')  (internal citations omitted).

Finally, it is incorrect to assert that "Petitioner cannot show that he may suffer irreparable harm if unable to secure immediate judicial consideration of his claim." ECF at 9. It is well established that prolonged detention in a carceral institution is itself an irreparable harm. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 33 (1st Cir. 2021) (finding irreparable harm to both individual noncitizens and the community from prolonged unlawful detention); *Jimenez v. Nielsen*, 326 F.R.D. 357, 361 (D. Mass. 2018) ("Unlawful detention causes irreparable harm to petitioners and their families.") Mr. Olivera Dos Reis has been detained for over five months, separated from his family and community and held in a jail.

In addition to the harms inherent in incarceration, Mr. Olivera Dos Reis also explained in detail that he will be irreparably harmed by having to pursue immigration relief while detained

ECF 1 at 14. Defending a case while detained poses significant additional challenges to detainees and their counsel. *See, Demore v. Kim*, 538 U.S. 510, 554 (2003) (Souter, J., concurring in part and dissenting in part) ("[D]etention prior to entry of a removal order may well impede the [noncitizen's] ability to develop and present his case on the very issue of removability").

Even more important, Mr. Olivera Dos Reis has plausibly alleged that the highly compressed time frame of detained immigration adjudication often makes certain forms of relief entirely unavailable as they may require time for adjudication of applications by another agency and time to wait for visa availability. This is particularly the case for noncitizens like Mr. Olivera Dos Reis with pending petitions for Special Immigrant Juvenile Status (SIJS). It is also true for noncitizens with pending criminal charges as these affect their ability to obtain discretionary relief such as asylum and adjustment of status. ECF 1 at 13-14. It is not an exaggeration to state that Mr. Olivera Dos Reis's detention status will likely be outcome-determinative in his immigration proceedings. *Id.*

### ii. This Court has Jurisdiction

Respondent concedes, as he must, that federal courts retain jurisdiction to "review constitutional challenges to the immigration bail system." ECF 10 at 11. Contrary to Respondent's suggestion, Petitioner has pled such a claim. *Id.* At 11-12.

In *Brito*, the First Circuit held that federal courts have the authority to issue declaratory judgments that specify the requirements of due process and have preclusive effect in subsequent proceedings. 22 F.4th at 250. The *Brito* Court also recognized that *Hernandez-Lara* is binding authority which "adds to that toolbox by effectively accelerating the adjudication of similar habeas petitions within this circuit." *Id.* The question then becomes what requirements this binding precedent imposes that are enforceable through subsequent habeas petitions. The Respondent

implies that "*invoking* the correct legal standard" in a written order is the beginning and end of what the Constitution requires. ECF 10 at 12 (emphasis added). That cannot be correct.

The Supreme Court recently held that, under the INA, discretionary decisions that are tethered to a legal standard are reviewed as mixed questions of law and fact. *Wilkinson v. Garland*, 601 U.S. 209 (2024). The Court clarified that while 8 U.S.C. § 1252(a)(2), strips courts of jurisdiction to revisit factual findings such as credibility or level of hardship experienced by a relative, whether those facts satisfy a legal standard is reviewable under 8 U.S.C. § 1252(a)(2)(D). *Id.,* at 225.

The Supreme Court then summarily vacated and remanded a case from the Ninth Circuit that had held 8 U.S.C. § 1226 (e) prevented the federal courts from reviewing a determination by the Attorney General that a detained noncitizen posed a danger to the community under § 1226 (a). *Martinez v. Clark*, 144 S. Ct. 1339 (2024). On remand, Judge Bumatay found that *Wilkinson* compelled the conclusion that an agency finding of "dangerousness for immigration detention purposes" is a mixed question of law and fact and therefore reviewable. *Martinez v. Clark*, 124 F.4th 775, 779 (9th Cir. 2024). While the *Wilkinson* case involved circuit court petitions for review under § 1252(a)(2)(D), Judge Bumatay determined that it's holding on the scope of legal questions also applied to 8 U.S.C. 1226 (e). He ruled that the determination of whether a set of facts meets the legal standard to justify detention without bond is a legal question, not a discretionary one, and therefore reviewable by district courts under 8 U.S.C. 1226 (e). *Id.* at 782.

The Supreme Court did not definitively establish the standard of review for those conclusions. Instead, the *Martinez* Court found an abuse of discretion standard to be appropriate. Id. at 784. In this District, prior to *Wilkinson* at least one decision also found that the question of whether a bond hearing complied with constitutional requirements is reviewable. *Massingue v.*

13

*Streeter*, No. 3:19-CV-30159-KAR, 2020 WL 1866255, at *4 (D. Mass. Apr. 14, 2020) ("The weight of authority, including authority in this district, does not support the government's contention that this court lacks jurisdiction to consider Petitioner's claim that the February 24, 2020, bond hearing was not in compliance with the constitutionally mandated [standard].) In that case, the Court recognized that it must review both whether "evidence itself could . . . – as a matter of law – have supported the adjudicator's conclusion" and whether it is clear from the opinion itself that the adjudicator applied the incorrect legal standard. *Id.*

### iii. The Bond Decision is Erroneous.

Whatever standard is applied, the Bond Order at issue in this case is not sustainable. It is now well established that "[m]erely stating the proper standard does not discharge the obligation to correctly apply the standard. *Akinsanya v. Garland*, 125 F.4th 287, 297 (1st Cir. 2025). Here, the Court may defer to all facts found by the IJ but still find that those are insufficient to conclude that Petitioner is a flight risk by a preponderance of the evidence. The Court in *Massingue* articulated a standard that is substantially similar to abuse of discretion review in that the Court determines both whether the weight of the evidence would support the conclusion and whether the legal analysis was correct. *Id.* The order here fails both prongs.

The IJ in this matter expressly finds that "the record does not at all suggest by clear and convincing evidence that [Mr. Olivera Dos Reis] was involved in illegal arms sales." ECF 1 Exhibit 5, at 3-4. The only conclusion that the IJ finds is supported by a "preponderance of the evidence" is Mr. Olivera Dos Reis' "awareness of the illegality of the conduct that occurred right before his eyes." *Id.*

The IJ does not even find that this fact establishes that Petitioner is *likely* to abscond from future hearings. Rather, the IJ switches gears and states that because the Respondent has

14

"voluntarily associated himself with such dangerous and highly illegal activity" that she is therefore "***not inclined to believe that*** he is likely to follow the instructions or other orders of the court, should he be granted bond." *Id.* at 4-5. (emphasis added) The IJ therefore found that a preponderance of the evidence supports the conclusion that the Petitioner voluntarily entered a car where other occupants engaged in illegal activity. From this fact, proved by the correct legal standard, she stated her disclination to believe that a person who chose to "associate" themselves with other people charged with crimes would voluntarily appear for hearings. By its own terms, the decision expresses a belief or suspicion that Respondent poses a flight risk. *Cf. Wenhold v. Royal Ins. Co.*, 197 F. Supp. 75, 79–80 (D. Mass. 1961) ("But suspicion, even strong suspicion, is not an acceptable substitute for proof by a preponderance of the evidence.") Needless to say, *Hernandez Lara* requires that the government prove *flight risk* by preponderance of the evidence, not facts which might incline the fact finder to disbelieve that the detainee will appear for hearings if granted bond. See, *Hernandez-Lara Herna,* 10 F.4th at 33.

      Given the totality of the evidence, no reasonable fact finder could conclude that Mr. Olivera Dos Reis was a flight risk. The government presented no history of failure to appear in courts, nor did they rebut his contention that he appeared for all prior immigration and district court hearings. Nor did they present any history of prior arrests. They did not contest that Mr. Olivera Dos Reis met the factors found most relevant in evaluating flight risk, including stable address, employment history and family ties. None of this was addressed by the IJ. ECF 1 Exhibit 5. The IJ's decision raises the purely legal question of whether awareness of the criminal activity of others, on its own, is ever sufficient to prove risk of flight. *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229, 140 (2020) (finding that questions of law include the application of law to undisputed facts).

In its holding on standards of proof in immigration bond hearings, the First Circuit expressly referenced the analogous standard for pretrial detention of criminal defendants under the bail reform act. *Hernandez-Lara*, 10 F.4th at 40. There is thus a well-developed body of law applying flight risk determinations to pretrial detainees. The well-known factors considered for this determination cannot be reduced to awareness of alleged criminal activity of others or the voluntary association with other people accused of crimes. *See, e.g., United States v. Figueroa*, No. 3:20-MJ-3007-KAR, 2020 WL 360561, at *2 (D. Mass. Jan. 22, 2020)( finding that the government did not meet its burden of proving flight risk based on countervailing factors of family ties, lack of default for previous criminal charges) ; *United States v. Merrill*, No. CRIM.A. 14-04172-DHH, 2014 WL 2769148, at *6 (D. Mass. June 17, 2014) (finding government failed to prove flight risk of defendant with substantial assets and significant criminal liability due to length of residence in Massachusetts, risk of loss of homes if he failed to appear and lack of behavior suggesting preparations to flee); *United States v. Ocasio-Ramos*, No. 21-CR-324 (RAM), 2021 WL 6048935, at *4 (D.P.R. Dec. 21, 2021) (found government failed to prove that no set of conditions could reasonably ensure appearance at trial even considering serious history of arrests and a prior conviction). While the agency is entitled to deference in their findings of facts, the legal standard they are bound to apply is well known, requires consideration of specific factors and cannot be satisfied through the 'beliefs' or 'inclinations' of an individual adjudicator based on idiosyncratic criteria.

Nor as these factors mere "dicta" as Respondent opines. They are essential reasoning supporting the holding of the *Hernandez-Lara* Court, which by its own terms depended on a detailed wholistic analysis of the *Mathews* factors. *E.g., Markham Concepts, Inc. v. Hasbro, Inc.*, 1 F.4th 74, 81–82 (1st Cir. 2021) ("As we have often observed, when a statement in a judicial

decision is essential to the result reached in the case, it becomes part of the court's holding. The result, along with those portions of the opinion necessary to the result, are binding.") (internal citations omitted) (cleaned up).

As the *Hernandez-Lara* court made plain, the particular standard of evidence it applies to flight risk satisfies due process because of the types of information and evidence that it requires the noncitizen to access in order to effectively rebut the government's lower burden of proof:

> as noted, detained noncitizens possess knowledge of many of the most relevant factors, such as their family and community ties, place of residence, length of time in the United States, and record of employment. And because the burden is on the government, the noncitizen need not prove a negative (by showing, for example, that he or she has not fled prosecution or failed to appear at court) but is instead faced with the more straightforward task of marshalling evidence readily available to her so as to rebut the government's evidence. Given these considerations, the probable value of a heightened standard of proof is thus less apparent when it comes to flight risk. *Hernandez-Lara,* 10 F.4th 19 at 40.

It is only because of the particular factors relevant to flight risk, that the *Hernandez-Lara* Court held that this standard acceptably balanced the government's interest in insuring that noncitizens attend hearings with the liberty interest of noncitizens in avoiding the serious harms of unnecessary detention. *Id.* Respondent attempts to cabin the holding to a requirement that the correct legal standard be recited in the Bond Order. ECF 10 at 13. This cannot be correct as it would render the First Circuit's decision an empty formality. *See*, *Akinsanya,* 125 F.4th at 297.

Respondent has failed to meet his burden of demonstrating that the Petition, when read in the light most favorable to the non-moving party fails to retain this Court's jurisdiction or fails to plausibly allege that Petitioner's due process rights were violated. As Respondent has offered no other defense of Mr. Olivera Dos Reis' continued detention, the Petition should be adjudicated and granted.

IV. **CONCLUSION**

For the reasons set forth in the petition and herein, the Court should deny Respondent's motion to dismiss in its entirety, grant the Petition, and order that Mr. Olivera Dos Reis be released from custody. Alternatively, the Court should grant a conditional writ, declare that Respondents' have not met their burden of proving by a preponderance of the evidence that the Petitioner is a flight risk and order that the Department of Justice release Petitioner subject to reasonable conditions that will assure his appearance at future immigration court hearings within 5 days of the date of the order.

Dated this 31st day of March 2025,

                                            Respectfully Submitted,

                                            PABLO OLIVERA DOS REIS

                                            By and through his counsel,
                                              /s/Carl Hurvich
                                            Carl Hurvich (MA B.B.O.698179)
                                            Brooks Law
                                            10 High Street, Ste 3.
                                            Medford, MA 02155
                                            (617) 245 8090
                                            Carl@Brookslawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to any persons indicated as non-registered participants.

Dated:  March 31st, 2025

By: /s/ Carl Hurvich

CARL HURVICH
Counsel for Petitioner